New York Mun. Ins. Reciprocal v Stewart's Shops Corp. (2024 NY Slip Op 03219)

New York Mun. Ins. Reciprocal v Stewart's Shops Corp.

2024 NY Slip Op 03219

Decided on June 13, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 13, 2024

CV-23-1146
[*1]New York Municipal Insurance Reciprocal, as Subrogee of Village of Middleburgh, Respondent,
v
Stewart's Shops Corporation et al., Appellants. (And a Third-Party Action.)

Calendar Date:April 22, 2024

Before:Garry, P.J., Clark, Ceresia, Fisher and Powers, JJ.

Smith Sovik Kendrick & Sugnet PC, Syracuse (Steven W. Williams of counsel), for appellants.
Congdon, Flaherty, O'Callaghan, Fishlinger & Pavlides, Uniondale (Michael T. Reagan of counsel), for respondent.

Fisher, J.
Appeal from an order of the Supreme Court (Peter A. Lynch, J.), entered June 16, 2023 in Schoharie County, which denied defendants' motion for summary judgment dismissing the complaint.
In 2016, defendant Stewart's Shops Corporation (hereinafter Stewart's) purchased three contiguous properties in the Village of Middleburgh, Schoharie County, on which it intended to build a new store. In order to do so, Stewart's was required to remove and dispose of an underground fuel storage tank and contaminated soils through a process that included installing and later removing certain containment sheet pilings. Stewart's contracted with defendant R.M. Dalrymple Co., Inc. (hereinafter the contractor) to complete the remediation project on the property. In October 2017, after the project had been completed, foundation and structural damage was discovered in the building owned by the adjacent property owner, third-party defendant Village of Middleburgh (hereinafter the Village). Upon investigation, it was determined that such damage was caused by the remediation project performed by the contractor.
In September 2020, plaintiff, the contracted insurance provider of the Village, commenced this subrogation action against Stewart's and the contractor. After issue was joined, defendants commenced a third-party action against the Village. Defendants then moved for summary judgment, contending that plaintiff lacked standing to commence this action due to the absence of payment under the policy prior to commencement and that any future attempt to do so was barred by the statute of limitations. Plaintiff submitted opposition, and Supreme Court denied the motion. Defendants appeal.
We reverse. "Unlike contractual subrogation where the subrogee's rights are defined in an express agreement between the insurer-subrogee and the insured-subrogor, the rights of an insurer against a third party as equitable subrogee arise independently of any agreement" (Federal Ins. Co. v Arthur Andersen & Co., 75 NY2d 366, 372 [1990] [citations omitted]). Indeed, the rationale behind the doctrine of equitable subrogation is "that the party who causes injury or damage should be required to bear the loss by reimbursing the insurer for payments made on behalf of the injured party" (NYP Holdings, Inc. v McClier Corp., 65 AD3d 186, 189 [1st Dept 2009] [internal quotation marks and citation omitted]; see Brown v Bellamy, 170 AD2d 876, 877-878 [3d Dept 1991], lv denied 78 NY2d 853 [1991]). Based on this concept, the "insurer's [equitable] subrogation rights accrue upon payment of the loss" (Winkelmann v Excelsior Ins. Co., 85 NY2d 577, 582 [1995]), of which such payment must be made toward satisfying an actual claim and not a potential liability to pay (see Fasso v Doerr, 12 NY3d 80, 86-87 [2009]; City of New York v Cross Bay Contr. Corp., 93 NY2d 14, 20 [1999]; American Sur. Co. of New York v Palmer, 240 NY 63, 67 [1925]). In seeking to enforce those rights, the insurer is "subject to whatever defenses [*2]the third party might have asserted against its insured," including the statute of limitations (Federal Ins. Co. v Arthur Andersen & Co., 75 NY2d at 372; see Allstate Ins. Co. v Stein, 1 NY3d 416, 420-421 [2004]).
Here, the insurance policy and contract between plaintiff and the Village entitled plaintiff to seek recovery as the Village's subrogee; however, such standing only "accrue[d] upon payment of the loss" (Winkelmann v Excelsior Ins. Co., 85 NY2d at 582). As it is undisputed that plaintiff did not make its first payment to the Village until December 2021 — more than a year after commencing this action — plaintiff lacked standing to bring a claim as the Village's subrogee in September 2020 (see Allstate Ins. Co. v Stein, 1 NY3d at 422-423; Winkelmann v Excelsior Ins. Co., 85 NY2d at 582).[FN1] Accordingly, Supreme Court should have granted defendants' motion for summary judgment dismissing the complaint, and we make the appropriate entry. We have examined the remaining contentions of the parties and have found them to be without merit or rendered academic.
Garry, P.J., Clark, Ceresia and Powers, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, motion granted and complaint dismissed.

Footnotes

Footnote 1: To the extent that plaintiff contends that this holding harms an insurer's ability to protect its rights to subrogation when an insured fails to timely commence an action, "this sort of risk is inherent in subrogation[, as] the subrogee acquires only the rights that the subrogor had" and any action is subject to dismissal based on defenses that would defeat the subrogor's claim (Allstate Ins. Co. v Stein, 1 NY3d at 423). As plaintiff's first payment under the policy was made after the three-year statute of limitations applicable to the Village's claim had expired, plaintiff could not have brought the claim at that time (see CPLR 214 [4]; Group Health, Inc. v Mid-Hudson Cablevision, Inc., 58 AD3d 1029, 1030-1031 [3d Dept 2009]).