OPINION OF THE COURT
Edward H. Lehner, J.
The issue posed by this motion by defendant for summary judgment is whether a release procured by a tortfeasor from the owner of property damaged by the tortfeasor constitutes a defense to an action by the owner’s insurer to enforce its subrogation rights against the tortfeasor where (i) the insurer never advised the tort-feasor of its status as the collision carrier or that it had made payment on the claim, and (ii) the tort-feasor never made inquiry to ascertain the existence of subrogation rights.
This action arises from an automobile accident that occurred on May 16, 1980 in which a vehicle owned by Norwalk Foods, Inc. (Norwalk), the insured, was struck by a vehicle owned and operated by defendant Maruszewski. On July 10 plaintiff, Norwalk’s insurer, made payment of $457.02 to the insured who executed a release and subrogation receipt. On July 25, Hartford Insurance Company, *987 on behalf of Maruszewski, paid the insured $451 for the damage and received a release.
Plaintiff now seeks to recover the amount it paid to its insured from the tort-feasor, claiming that once it paid its insured for the damages sustained, the insured no longer possessed any interest in the claim and therefore could not release the third-party wrongdoer from liability on the now subrogated claim. Plaintiff further asserts that defendant’s insurance carrier “should have had knowledge that Nor-walk’s rights would be subrogated.”
Defendant sets forth the release as a defense, arguing that since the insurer as subrogee steps into the shoes of its subrogor, it is barred from suit.
Where a release has been obtained by a tort-feasor from an insured after the insured has already received payment from its insurer, the right of the latter to recover from the third-party tort-feasor exists only where the third party, at the time it settled with the insured, knew or possessed information which reasonably pursued would have given it knowledge of plaintiff’s status as an insurer of the party whose property was damaged, and that the insurer had by payment been subrogated to the claim against the tortfeasor. (Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co., 240 NY 37, 46; Silinsky v State-Wide Ins. Co., 30 AD2d 1; Scavone v Kings Craft Corp., 55 AD2d 807; Kozlowski v Briggs Leasing Corp., 96 Misc 2d 337.)
Plaintiff herein never notified defendant of its status as the insurer’s collision carrier or that it had made payment on the claim. Defendant, on the other hand, never sought to determine whether a subrogated claim existed. Thus, neither party having taken any action to either preserve or ascertain its rights prior to defendant’s settlement with the insured, this court must determine which party under such circumstances should sustain a loss. Although Norwalk is a party defendant, no application against it is before the court.
The right of subrogation originally arose in equity and its operation is governed by equitable principles. It “does not depend upon contract but is created simply from the equities of the situation”. (Simpson, Suretyship, p 208; see, *988 also, McClintock, Equity [2d ed], § 123; 16 Couch, Insurance, § 61:19 [rev 2d ed]; Seely’s Son v Fulton-Edison, Inc., 52 AD2d 575, 578; Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co., supra, p 47.) The doctrine should not be invoked against one whose equities are equal or superior to the party seeking to be subrogated (Seely’s Son v Fulton-Edison, Inc., supra; Bell v Greenwood, 229 App Div 550.)
Since the right of subrogation arises not from liability to pay, but from actual payment (Hartford Acc. & Ind. Co. v CNA Ins. Cos., 99 AD2d 310; American Sur. Co. v Palmer, 240 NY 63; 6A Appelman, Insurance Law & Practice, § 4051, p 112), no rights accrue to the insurer without its own affirmative act. Therefore, such insurer is best situated to know whether a subrogation right has ripened into an enforceable claim.
For the insurer to have the right to recover from the third-party tort-feasor under the principles gleaned from Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co. (supra), the settling third party must have had actual or constructive knowledge of three independent facts. First, it must have knowledge of plaintiff’s status as an insurer of the other party to the accident. In a compulsory liability insurance jurisdiction such as New York, this information is ordinarily ascertainable at the accident scene or through the Department of Motor Vehicles. Second, it must have knowledge of coverage as to the particular type of claim. Where a collision claim is involved, as in the case at bar, the fact that the insured carries collision is not ordinarily of concern to the other party. Thus, information as to such coverage is not exchanged at the scene of an accident. Further, the existence of such insurance cannot be ascertained from public records. (See 15 NYCRR 32.8 [d]-[h]; 32.9; 11 NYCRR part 241; 15 NYCRR part 160.) Third, it must have knowledge that the carrier had been subrogated to the rights of the insured.
In Camden Fire Ins. Assn. v Bleem (132 Misc 22, 35), cited by plaintiff, the court stated:
“The use of the automobile has become so universal and such a general practice in modern life that its use and *989 operation may be assumed to be matters of common knowledge. It is, therefore, generally recognized, particularly by owners and drivers of motor vehicles, that insurance companies issue policies in great numbers to such persons, indemnifying them against damage by accidental collision.
“As an owner and driver of a car which caused the injury to the Case car, which is the subject of this action, defendant is presumed to have known or had enough general information which, reasonably pursued, would have given him knowledge of plaintiff’s status as an insurer against claims springing from defendant’s fault and that it had become subrogated thereto.”
Thus, finding that the third party had sufficient notice of the subrogated claim, the court in Bleem allowed the insurer to recover. Seeking an equitable result under the circumstances, the court noted {supra, p 37) that a contrary rule “tends to enable the wrongdoer to go scotfree and to place a premium upon fraud and dishonesty”. In that case, however, the defendant apparently paid no consideration for the release. In contrast, in the case at bar, both parties paid approximately the same amount to Norwalk.
Although several cases in this jurisdiction have quoted the general rule of subrogation as enunciated in Ocean Acc. & Guar. v Hooker Electrochemical Co. (240 NY 37, supra), both as to actual and constructive notice of the claim, no decision has been found, other than the Bleem case, in which a court found notice to be adequate where the third party had received no communication of any kind providing information about a subrogation. In Neuss, Hesslein & Co. v 380 Canal St. Realty Corp. (9 Misc 2d 903), for example, the third party had received a letter from plaintiff’s subrogor 10 months before signing the release. Likewise, in Scavone v Kings Craft Corp. (55 AD2d 807, supra) and in Kozlowski v Briggs Leasing Corp. (96 Misc 2d 337, supra) letters to the third party were held to give sufficient notice. Similarly, litigation to enforce the insurer’s subrogation claim pending at the time of the tort-feasor’s settlement with the insured will ordinarily constitute sufficient notice of the insurer’s interest. (Wenglin v Bank of New York, 87 NYS2d 38; Miller v Auto-Owners Ins. Co., 392 So 2d 1201 [Ala]; Ann., 92 ALR2d 102, 139-141, Rights and *990 Remedies of Property Insurer as Against Third-Person Tortfeasor Who Has Settled With Insured.)
Coming to the facts of this case, the court finds that defendant did not have constructive notice (no actual notice is asserted) of the subrogated claim. The mere fact that liability insurance is required in New York and that the name of the insurer is obtainable through the Department of Motor Vehicles should not result in a party being deemed to have constructive notice of all coverage provided by the insurer. Since collision coverage is not mandatory, many motorists do not carry such insurance. (See Tarantola v Williams, 48 AD2d 552, 558 [Gulotta, P. J., concurring].) Moreover, even if defendant had actual or constructive notice of the existence of collision insurance, there is no claim that he had notice of the payment by the plaintiff to Norwalk, which notice would be requisite to bar the enforceability of the release obtained by defendant.
As a matter of policy, it would seem preferable to require that upon an insurer’s acquiring a claim by subrogation that it promptly give notice of such fact to the alleged tortfeasor rather than to require the tort-feasor or his insurer to attempt to determine whether collision insurance exists prior to settling with the insured. Expeditious settlement of claims is a desired goal. To require a settlement to be delayed pending inquiry of the insured’s carrier as to the existence of collision insurance and the amount of the deductible would not be in accord with such goal.
Accordingly, between an insurer acquiring a claim by subrogation who fails to notify the tort-feasor thereof, and a tort-feasor failing to inquire as to the existence of collision insurance, the court believes that the loss should fall upon the former. To the extent that the decision in Camden Fire Ins. Assn. v Bleem (132 Misc 22, supra) is to the contrary, the court declines to follow same.
Since there are no facts alleged tending to show that at the time he settled with plaintiff’s insured defendant had either actual or constructive notice of plaintiff’s subrogated claim, there are no triable issues of fact upon which defendant may be found liable. Accordingly, his motion for *991 summary judgment is granted, the complaint against defendant Maruszewski is dismissed, and the clerk may enter judgment accordingly.